IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

GERALDINE PITTS,               )
                                            )
           Plaintiff,         )
                                            )
      v.                      )       CIVIL ACTION NO. 3:06CV454-SRW
                                          )                (WO)
MICHAEL ASTRUE,          )
COMMISSIONER OF SOCIAL )
SECURITY,                )
                                            )
          Defendant.      )

## MEMORANDUM OPINION

## I.  INTRODUCTION

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social

Security Act,  42 U.S.C. § 401, alleging that she was unable to work because of a disability.

Her application was denied at the initial administrative level.  The plaintiff then requested

and received a hearing before an Administrative Law Judge (ALJ), who granted the claim

for a closed period of time but did not grant continuing benefits.  On a subsequent request

for review, the Appeals Council reversed the decision of the ALJ and ordered that the claim

be consolidated with a subsequent application for benefits.  A second ALJ denied the claim

in its entirety, and the Appeals Council rejected a subsequent request for review.  The ALJ's

decision consequently became the final decision of the Commissioner of Social Security

(Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L.
No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to

now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3).  Pursuant

to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry

of a final judgment by the United States Magistrate Judge (Docs. #9-10, filed June 26, 2006).

Based on its review of the record and the briefs of the parties, the court concludes that the

decision of the Commissioner should be affirmed.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months....

To make this determination[2] the Commissioner employs a five step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the *Listing of
> Impairments*]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative

---

Social Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or
psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory
diagnostic techniques.

answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th  Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  ISSUES

The plaintiff was forty-five years old at the time of the hearing before the second ALJ and has a sixth grade education.  The plaintiff's prior work experience includes work as an

---

[3]*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

institutional cleaner.  Following the administrative hearing, the ALJ concluded that the plaintiff had the following severe impairments: Morton's neuroma, major depression, alcohol abuse, borderline intellectual functioning, and "status post" right hand carpal tunnel syndrome and trigger finger repair.  He nonetheless concluded that the plaintiff was not disabled, because she was able to perform her past relevant work or, in the alternative, to work as a housekeeper, cafeteria attendant, or machine tender.  The plaintiff presents two issues for review: whether the ALJ improperly considered limitations resulting from pain in the plaintiff's right hand, and whether the ALJ failed to develop the record regarding the plaintiff's psychological limitations.

## IV. DISCUSSION

### A.  Right Hand Limitations

The plaintiff states that the ALJ failed to give proper consideration to pain in her right hand, and specifically that he "discarded evidence of disabling pain during the closed period and beyond[,] relying on the opinion of a medical expert who had never examined [the plaintiff,] thereby committing reversible error" (doc. #12, filed Aug. 25, 2006, p. 9). However, the plaintiff does not explain what evidence the ALJ "discarded," nor how any such evidence weighed against his findings.

 The plaintiff was diagnosed with carpal tunnel syndrome in April 1997 (Tr. 383), received corrective surgery in May 1997 (Tr. 374), and continued to work for over three years afterwards.  The record shows that the plaintiff suffered a fractured wrist bone in October 2000 (Tr. 377) which healed by August 2001 (Tr. 395).  In March 2002, a

4

consultative medical examiner found that the plaintiff had "normal" grip strength and ability to perform fine manipulations, with lifting capabilities consistent with light work and no restrictions on range of motion, but stated that the plaintiff should be limited to "occasional" pushing and pulling with the right arm (Tr. 390-91, 393-94).

The record also shows that in September 2002, the plaintiff complained of a new problem – pain in her right thumb (Tr. 202) – which resulted in a diagnosis of "trigger digit" (Tr. 118) and corrective surgical release in March 2003 (Tr. 121-22). In three reports immediately following the release, and in another from the following year, a treating physician noted that she was "doing well" after the release (Tr. 191, 193-95).  In August 2004, an examining neurologist found no abnormalities in the use of the plaintiff's hands and a *slight* tenderness in her right wrist (Tr. 154), with "minimal right median motor neuropathy...compatible with residual right carpal tunnel syndrome" (Tr. 156).  The examining physician suggested that tightness and pain resulting from this would cause her some difficulties in repetitive movements or lifting of heavy objects with the right hand (Tr. 155).  The examiner also completed a medical source opinion, assigning limits compatible with light work (Tr. 159) and stating that the plaintiff could "frequently" push and pull with the right and left arms.  Furthermore, when the plaintiff received psychiatric treatment in November 2004, the records show "no more than minor medical complaints" (Tr. 249).  At the second hearing, a medical expert agreed with the examining neurologist as to the plaintiff's capabilities (Tr. 442-43).

A vocational expert testified that the pain to which the plaintiff testified, even if taken

5

as fully credible, was not enough to "take her out of work" (Tr. 448).[4]   The ALJ reviewed the evidence noted above, and explicitly relied on the examining neurologist, the medical expert, and the vocational expert in making his determination that the plaintiff could perform her past relevant work (Tr. 26).   Thus, the ALJ's conclusion that pain and functional limitations of the plaintiff's right hand did not preclude work was supported by substantial evidence.  The decision of the ALJ is not due to be reversed on this ground.

**B.  Psychological Limitations**

In August 2004, a consultative examiner noted that the plaintiff's mental status was normal (Tr. 153).  In November 2004, the month before the second hearing, the plaintiff broke up with her boyfriend and attempted to commit suicide.  The plaintiff spent two days in a mental hospital, at the end of which she had no further suicidal thoughts (Tr. 167-70, 238-55), and her records showed no significant barriers to discharge or transition (Tr. 241-42).  At the hearing, the plaintiff testified that her mental status was "the same" as when she left the hospital and that she "won't try to do that no more" (Tr. 433).  Six days after the hearing, the plaintiff again saw her treating psychologist, who noted that she was "doing fine" on her antidepressant medication (Tr. 234), that she decided to "terminate services" and seek no further care, and that her decision to terminate services was *not* against medical advice (Tr. 233).  Except for a prescription for Wellbutrin that apparently began between June 2003 and February 2004 (Tr. 67, 208), the record contains no evidence of further

---

[4] The plaintiff cites the three part standard for discounting complaints of pain and other subjective symptoms without specifying how the ALJ violated this standard (doc. #12, filed Aug. 25, 2006, p. 8-9).

psychiatric treatment. The ALJ discussed the plaintiff's hospitalization (Tr. 22-23) but filled out a residual functional capacities assessment in which he assessed the plaintiff's psychological limitations as "none" or "mild" (Tr. 222-23) in each of the functional areas listed.[5]   In his hypothetical question to the vocational expert, the ALJ did not include any limitations based on depression (Tr. 446-47).

The plaintiff implies that the ALJ failed to develop the record with respect to the plaintiff's psychiatric problems (doc. #12, filed Aug. 25, 2006, p. 10), but does not explain what is lacking in the record. This court may only reverse the decision of the ALJ based on a failure to develop the record if the record before the court reveals evidentiary gaps resulting in unfairness or clear prejudice. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995); *see also McCray v. Massanari*, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001). Here, it does not appear that the ALJ neglected any existing psychiatric record, and the record suggests instead that the plaintiff voluntarily (and in accordance with her psychologist's advice) ceased to receive care that would generate such records. The court's independent review reveals no evidence that, apart from a single episode related to a one-time event in November 2004, the plaintiff's depression (when controlled by medication) significantly affected her ability to carry out basic work activities. The decision of the ALJ is not due to be reversed on this ground.

---

[5] Under 20 C.F.R. § 404.1520a(d)(1), such an evaluation normally leads to a conclusion that the relevant impairment is not severe. The ALJ treated the plaintiff's depression as a non-severe impairment by not including limitations based on it in his hypothetical question to the vocational expert. This implicit finding was supported by substantial evidence that the severe problem had resolved itself less than two months after its onset, and that the remaining problem was controlled with medication.

## V. CONCLUSION

The court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed. A separate order will issue.

Done, this 10th day of May, 2007.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE